CUSHMAN, PLAINTIFF, *v.* FLANAGAN, A. K. A. GEORGE L. FLANAGAN, JR., DEFENDANT.

Common Pleas Court, Montgomery County.

No. 118455. Decided October 1, 1962.

*Messrs. Schear & Klein, Mr. Louis R. Schear,* of counsel, for plaintiff.

*Messrs. Coolidge, Wall & Wood, Mr. Peirce Wood,* of counsel, for defendant.

(SANDERS, J., of Union County, sitting by designation in Montgomery County.

SANDERS, J.   Plaintiff's Petition states and the evidence discloses:

Plaintiff Cushman and one John Marcum, who controlled Dayton Speedway, Inc., being in financial straits, requested defendant George L. Flanagan to guarantee a note for Fifteen Thousand Dollars at The Peoples Bank & Trust Company. The claimed inducement for Flanagan was that Cushman and Marcum promised to persuade Midwest Sports Service, Inc., which had the refreshment concession at the Speedway, to handle Burger Beer as one of its items of merchandise.

The Petition would indicate that Midwest Sports Services, Inc. was the holder of the permit from the State of Ohio to sell beer. However, the evidence discloses that Dayton Speedway, Inc. was the holder of that permit. (Leave is granted plaintiff to amend his Petition to comply with the evidence.)

Burger Beer was and is distributed at wholesale by Air City Distributing Company, of which Flanagan is the President and principal stockholder.

Cushman and Marcum defaulted on their note. Flanagan had to pay the Bank and in turn took an assignment of the Bank's judgment against Cushman and Marcum.

On these facts, Cushman claims that the assigned judgment is void and has brought this action to prevent Flanagan from proceeding under the judgment, and requested a judgment for damages in the sum of Forty Thousand Dollars. The demand for Forty Thousand Dollars damages was abandoned by plaintiff and withdrawn from the Court's consideration during trial. We are now concerned solely with the

problem of whether defendant Flanagan should be permanently enjoined from taking any action to enforce the payment of the assigned judgment and certificate of judgment, and for an order or decree cancelling the certificate of judgment.

Plaintiff Cushman relies on Section 4301.24, Revised Code, the provisions of which, in part, are as follows:

"No manufacturer shall aid or assist the holder of any permit for sale at wholesale and no manufacturer or wholesale distributor shall aid or assist the holder of any permit for sale at retail by gift or loan of any money or property of any description or other valuable thing, or by giving premiums or rebates. No holder of any such permit shall accept the same, provided that the manufacturer or wholesale distributor may furnish to a retail permittee the inside signs or advertising and the tap signs or devices authorized by divisions (F) and (G) of Section 4301.22, Revised Code.

"No manufacturer shall have any financial interest directly or indirectly by stock ownership, or through interlocking directors in a corporation, or otherwise, in the establishment, maintenance, or promotion in the business of any wholesale distributor.

"No manufacturer or wholesale distributor shall have any financial interest, directly or indirectly, by stock ownership, or through interlocking directors in a corporation, or otherwise, in the establishment, maintenance, or promotion of the business of any retail dealer; nor shall any manufacturer or wholesale distributor or any stockholder thereof acquire, by ownership in fee, leasehold, mortgage, or otherwise, directly or indirectly, any interest in the premises whereon the business of any other person engaged in the business of trafficking in beer or intoxicating liquor is conducted. All contracts, covenants, conditions, and limitations whereby any person engaged or proposing to engage in the sale of beer or intoxicating liquors promises to confine his sales of a particular kind or quality of beer or intoxicating liquor to one or more products, or the products of a specified manufacturer or wholesale distributor, or to give preference to such products, shall to the extent of such promise be void. The making of such promise in any such form shall be cause for the revocation or suspension of any permit issued to

any party. This section does not prevent a manufacturer from securing and holding a wholesale distributor's permit or permits and operating as a wholesale distributor.

"No manufacturer shall sell or offer to sell to any wholesale distributor or retail permit holder, and no wholesale distributor shall sell or offer to sell to any retail permit holder, and no wholesale distributor or retail permit holder shall purchase or receive from any manufacturer or wholesale distributor any malt or brewed beverages or wine manufactured in the United States except for cash. No right of action shall exist to collect any claims for credit extended contrary to this section. This section does not prohibit a licensee from crediting to a purchaser the actual prices charged for packages or containers returned by the original purchaser as a credit on any sale or from refunding to any purchaser the amount paid by such purchaser for containers or as a deposit on containers when title is retained by the vendor, if such containers or packages have been returned to the manufacturer or distributor."

The Court must find for the defendant in this case for four reasons:

First: Defendant Flanagan has not violated any of the provisions of Section 4301.24, Revised Code.

Second: Plaintiff cannot invoke the intervention of equity because, if there had been an illegal contract, he was a party thereto and does not come into court with "clean hands."

Third: If there were an illegal contract, a court of equity would leave the parties where it finds them.

Fourth: The statute does not preclude defendant Flanagan from recovering any money advanced or guaranteed.

We will now consider the first reason:

Consider the quoted statutory provisions in light of Cushman's claim. Did a "wholesale distributor" aid the "holder of any permit for sale at retail"? No!

Flanagan is not a wholesale distributor. It is true he is an officer and stockholder of a wholesale distributor. However, the Legislature has shown in the first sentence of the second paragraph above quoted that when it wants to include the stockholders of a corporation in a prohibitory clause it knows how to do so ("nor shall any manufacturer or wholesale distributor *or any stockholder thereof . . .*"). (Emphasis supplied.)

Actually this statute is not ambiguous and needs no interpretation or construction.

Now the second reason:

Does plaintiff have "clean hands"? Plaintiff was more than willing to accept the credit and assistance of Flanagan when he thought he might prosper thereby. If the Speedway had been successful he would have been the recipient of the benefits, while Flanagan could only look forward to continuing with his minor profits of Seventy-Five to Two Hundred Dollars per year. Plaintiff reminds the Court of a man who would "kiss and tell." If the arrangement were illegal (which this Court finds it was not) he was a party thereto and has no standing in a court of equity.

Now the third reason:

The law, as it aptly has been epitomized, "leaves the parties where it finds them," where an illegal contract is in question. Neither the hard and fast rules of a court of law nor the more flexible customs of a court of equity ordinarily can be invoked for relief. *Hoffard* v. *Williams Shoe Co.*, 95 Ohio St., 376, 117 N. E., 17 (1917). A court will deny all relief to a suitor, however well founded his claim to equitable relief may otherwise be, if, in granting the relief, it would assist a party to an illegal contract or covenant. In this case, if relief is denied, the judgment, assignment, and certificate of judgment must stand.

Now for the fourth reason:

Even if the claimed original agreement among Flanagan, Cushman and Marcum were illegal under the statute, the Petition still would fail to state a cause of action, and the evidence would not support a finding for plaintiff. Were it a question of Flanagan's suing Cushman and Marcum for failing to handle Burger Beer, or were it a question of Cushman's suing Flanagan for failure to guarantee the note, then a defense based upon illegality would be in order. Here, however, the entire agreement, if any there were, was executed. Flanagan's present rights arise out of a judgment which he purchased from the Bank. Any illegality which may have tainted the original transaction is insulated from the matters presently at hand.

"But when the action is not founded on the contract, an illegal agreement can not be set up as a defense." 11 Ohio

Jurisprudence (2d), 371.   See also: *Hall* v. *Edwards*, 222 S. W., 167.

The Court declares that the transactions between plaintiff and defendant are legal, and were not made to circumvent the statutes and laws of Ohio.

The Court is of the opinion that defendant Flanagan is entitled to judgment against plaintiff on all issues joined in this cause.

Exceptions for plaintiff.